Good morning. May it please the court, I'm Jerry Sale. I'm here on behalf of the appellant, which I will call Happy Paws. And I'm going to try to reserve two minutes. We'll see how successful I am at doing that. There are three issues raised by the briefs in this case. The first issue is whether Happy Paws' substantive due process claim is somehow preempted by a takings analysis. The second issue is whether You can probably save yourself some time on that one. I was intending to save myself time on that, especially given the Crown Point development case and the Action Apartment Association case. We like to think so. Yes. I thought you might. The second issue, which is the one I do intend to address, is whether the code requirement that animals be kept in a facility no longer than six months violates Happy Paws' substantive due process. Maybe it violates the dog's due process because this is kind of a death penalty, isn't it? That's correct. Now, I wasn't sure of what case might give me the dog's due process, but, in fact, that's exactly right. I think that this provision works only, in fact, if dogs are killed. It's the only way that you can make this provision work, and that's, of course, the argument that I wish to make. I intend to submit the third question, which is that the barking provision is unconstitutional for vagueness on the briefs, and I don't intend to argue that further this morning. As indicated in the briefs, the test for a substantive due process claim is a three-part test. Essentially, the first provision, does the issue relate to a legitimate public governmental concern? Second, if so, are the means used reasonably designed to meet that end? And third, is it unduly oppressive? According to the county, the purpose of the six-month limitation is this, and I'm quoting from the county's materials, institutionalized containment could potentially lead to animal collecting and hoarding and may create serious conditions of cruelty and neglect. Now, as to the first of the three-part test, Happy Paws readily concedes that that test is met in this case. They agree that animal safety, eliminating cruelty to animals, is a legitimate concern of the county. But Happy Paws disagrees that the six-month limitation is in any way rationally related to that goal, and it also asserts that it's unduly oppressive to them in their use of this property. I wish to make two points about this. I want to explain why the six-month limitation doesn't meet the goal that it's intended to meet and doesn't rationally apply to it, and second, to explain why the alternatives that the county supposedly has are not real alternatives. Animal collecting and hoarding that leads to serious conditions of cruelty and neglect should be prohibited, but there's no question in this case, really, that Happy Paws is anywhere in that department. There's much indication in the record that the Happy Paws animals are well kept for animals, their medications are taken care of, they're in a good environment with plenty of room, plenty of room, can go in at night, have a play area, so on and so forth, and in fact, all inferences would have to be in favor of the non-moving party on that point. Assuming that the six-month rule is debatable, that is, you say it cuts off things too soon, they say, well, it's a reasonable way to assure that the animals get moved on from what can be a stressful environment and that they're adopted out in due course to assure their own safety and the safety of those who might be adopting them. If it's debatable, then how can we say there's a substantive process violation? If it were applied that way, and of course you posited that the animals were under stress in that situation, which is not necessarily the case. Well, I'm sure in any individual animal's case, it may not, but you're saying that the city could reasonably conclude that in general it can be a stressful environment and in general it makes sense to move dogs on, and they've got a scheme for moving them on. I mean, they either move on to adoption or they move on to a shelter with a different kind of license. If those were available, and I don't think they are. But again, the first question was if they have a reasonable grounds for it, does it need to be upheld? And of course it does under the standards because there's a deferential standard, but the argument is it's not rationally related, that imposing a time limit is not rationally related to the means that they propose. If we take an animal and that animal is well suited to its environment and it is safe in that environment and it is not deteriorating in that environment, and at the end of six months, if that animal has not been adopted and cannot be adopted and doesn't have other means for it, and I want to get to those about what the other means, then imposing on them a removal because six months has passed, not only doesn't meet that goal, but it fosters cruelty to animals. Because if you have to move them in that six months, you're taking an animal that's well suited and you're putting it into an environment which is not well suited for it or it would be there. It's not capable of being adopted at that time. If you move it toward adoption, it's not good for the animal. If you move it to another shelter, it's not good for the animal. Foster care isn't really available, but if you moved it to foster care, it's the same issue. You're moving the animal to move the animal, and that's not good for the animal which the county concedes. What kind of dogs are unadoptable? Dogs that are unadoptable, well, you can imagine, if you have a puppy on this one hand that's cute and cuddly and smells good and it looks at you, that's very adoptable. On the other hand, you can have dogs that have mange, they have bad breath, they don't get along with children, they don't get along with other dogs, they are old, that's a problem, they're large and therefore they need a fenced-in yard and so on. They may be ugly, they have an eye out. There are any number of reasons why dogs are relatively unadoptable, not completely unadoptable, but their person is hard to find. And there are dogs of this sort that are at issue here. And after six months, there aren't options. After six months, the only options, in fact, if that six months is imposed, are cruel to that dog. Now, it's absolutely true. On the other hand, if you have a situation that's bad for the dog, if you have a small environment for the dog, relatively limited room for the dog to move in that situation, and they can't see the other dogs, they're not paired with other dogs, they can't run, and they're left in that environment, then that can be harmful to them. But you see, the length of time by itself is not rationally related to the cruelty requirement. It has nothing to do with it, because that applies to all situations, including situations where the length of time would only impose cruelty on the dogs, would only foster cruelty, as opposed to addressing the cruelty. And therefore, their deference is not appropriate, it's not rationally related, and it shouldn't be allowed in this case. Is there any relationship between these dogs being more likely to bark and howl if they've been held for a long time? Is that part of the rationale? No, no, there is not. Now, there's not much in the record in this regard. There's nothing in the excerpt of record that applies to this. But in fact, as dogs become accustomed to their environment and as they become older, I believe they're less likely to bark and howl. If dogs are discomfitured, they may be in a position. But, I mean, there's nothing in the record to indicate that either. Now, I have run into my rebuttal time without getting to my third point, but I think I'd like to save some time for rebuttal. Surely. Thank you. Mr. Held. Good morning to all of the police court. My name is Michael Held. I'm a Deputy Prosecuting Attorney in Snohomish County, representing Snohomish County in this particular matter. The briefing before the court and opposing counsel, of course, has properly set forth the standard that in order for a substantive due process to undermine a validly enacted piece of legislation, that legislation must be arbitrary and have no substantial relation to legitimate government interest. It would appear from the argument and from the pleadings of the appellant that they are conceding that the county has legitimate governmental interest in protecting the welfare of animals within that particular community. But may this be an irrational way to try to protect them? Indeed not. What transpired in this, well, shelters are transitional places. The operators of shelters are guardians of dogs who are unwanted, abandoned, or stray, waiting for adoption. And we argue that by definition, then, shelters are places of temporary refuge. And as a result, they are not in Snohomish County, and I would argue not anywhere else, shelters are not defined as permanent or long-term homes for these animals. So what happened in Snohomish County is that when it promulgated its shelter ordinance and defined shelters as temporary places for animals awaiting adoption, it, of course, was reasonable to then define what temporary meant. Now, Your Honor, all legislation involves the drawing of lines. And if temporary is to be defined, it is reasonable to draw that line. Well, what's the governmental interest? Well, the governmental interest is based on a belief that shelters are a kind of place where long-term institutional confinement to the dogs is harmful to their well-being. This is a choice between long-term care and euthanasia? Is that what we're talking about? Isn't the governmental interest in the welfare of the dog? It is in the welfare of the dog. I understood that what was conceded was that the government's interest was to protect the safety, health, and well-being of pets and prospective owners. I mean, that's the conceded government interest. Yes. If I understand it correctly from the briefs. So then the question is whether the rule rationally furthers that interest. Sure. What transpired in Snohomish County is that it was determined to be reasonable to define what temporary meant for those persons who were operating these shelters. Could you, just for background, what was the alternative? In other words, you talk about temporary and transition. So what is the structure here? What is contemplated as the next step? What is available? So you can go ahead and answer the question, but I'd like to understand what's after the six months? Well, a couple of things. If I take your question more globally, if you are an individual business owner or citizen of Snohomish County and you wish to house a large number of dogs on your property, you must do so according to the licensing structure within the county. If you wish to own them, there are a series. I understand that. Let me try. We've been talking here with the assumption that the cliff that comes along at the end of the six months is euthanasia. And if you look at it that way, you're saying you basically, it comes across as if you're saying this entity can exist, these shelters can exist, but they've got six months to deliver on an owner an adoption. And if they don't succeed in six months, the dog may be healthy as heck and a beautiful dog or an ugly dog or whatever. There's no practical alternative. So it's a six-month probation on euthanasia, it sounds like. And that is not the way the scheme operates when read as a whole. After six months, again, there are claims within the record I don't know, by appellants I do not believe are actually supported factually within the record, but that many dogs, for example, are unadoptable. But assuming that some may be difficult to adopt out within six months, the code contemplates that that particular shelter owner has the options anywhere within that six-month period of recognizing that potential issue and seeking to place that animal in foster care. If that animal is placed successfully in foster care while it is behaviorally or medically rehabilitated or trained, they can be in foster care for an additional six months. Additionally, if an animal is truly unadoptable, if you have an old, unattractive, three-legged, one-eyed dog who the compassionate side of us all says has every right to continue to live a full and complete life but couldn't be adopted within six months and may not be adopted at any particular point in time, Happy Paws has every right to obtain a complementary license in St. Holmes County called a commercial kennel nonboarding license, which allows a resident or shelter operator to essentially take ownership of that particular dog and license it and keep it, which does not mean that if at some point in time that dog became adoptable, became healthy enough to be placed in an adoptive population, that it couldn't therefore be placed there. We saw in the briefing, and we made here in rebuttal, an argument that that's not practical or it's not possible. There is no evidence before this particular court on the record that Happy Paws is without the means of undertaking that particular additional licensure. And it would not be in the county's position by any means unduly burdensome for them to do so. They have eschewed their right to do this, but that would certainly guarantee that any animals that could not be adopted can continue to be cared for. Happy Paws could continue to advertise on their website that there's an animal here who is likely not to be adopted, that it continues to need your financial support. You could adopt them electronically, if you will, and provide them the comforts that improve their quality of life. But the six-month limitation under our scheme does not mean that this animal must be euthanized. They could also be moved. I want to go back and make sure I understand what you're saying. You're saying that there is a scheme to go beyond six months. One is a six-month extension if they can find foster care, and then one is more individualized, which allows them to, that is the shelter, to have a second license, which would allow them to pick up certain dogs that are unadoptable. Yes. You say that there's no evidence in this record to show that that alternative isn't practical or unavailable. This is on summary judgment, so I just want to make sure that, is this a disputed fact, or your argument is that there's no fact? There's no fact. No basis for that concern at all? There's no factual record created in the court below that would support that particular allegation, at least in my opinion. But even if it was a disputed fact, I believe that under the test or the analysis for undermining this particular piece of legislation, the court needs to find that it was, in fact, arbitrary and not rationally based. It could be arbitrary if, in fact, there are other alternatives that could be feasible, but for a sort of drop-dead, no pun intended, six-month limit on the retention in a shelter. I understand the interest in all the hoarding, but when you have a population which is variable, and I think we all know from our own experiences some dogs are more attractive than others and desirable than others, here they're taking these dogs off the streets and finding a way, and that's the purpose of the law, as I understand it, to find a way to more humanely treat dogs and not have to euthanize them as the first resort. The fact that six months has been defined as opposed to five-and-a-half months or seven-and-a-half months or a year, I suggest to the court we would be here likely regardless of what the length of time is, but because shelters should be temporary, it is reasonable for us to provide some sort of line to work from. Are you saying to us that there is an additional license that is available to these people? Is it for individual dogs or for any dog that they determine is not adoptable within the six-month period? It would be for any dog they determine was not adoptable within the six-month period. A commercial kennel nonboarding license in Snohomish County allows the holder of that license to keep and maintain and own up to 25 dogs on their property. Of course, they would have to qualify for the license, but there isn't an expectation, and there's nothing in the records that suggests that a happy pause is incapable of qualifying for such a license if they apply for it. Why didn't the city suggest it to them, or why didn't they apply for it? This is odd. Well, the county did in fact suggest it to them at the time these matters were brewing back in 2003, and the record reflects that through Ms. Lubrin's declaration. But I cannot, the record doesn't state why happy pause chose not to make application and seek that particular alternative. Thank you, Your Honor. Thank you. Mr. Held? Mr. Sale? Thank you. That did raise the issues that I was hoping to raise last, and that is whether these alternatives are in fact reasonable alternatives, of which there are two. One is foster care, and the other is the other licensure. In regard to foster care, that doesn't provide a solution because these animals are not necessarily suitable for foster care at any rate, and if they're not adopted within that next six-month limitation, of course, we're back with the same problem. But essentially, they're not suitable for the limited places for foster care. With regard to the license, the record is not where it should be, and that's unfortunate. The record does show that happy pause knew that the license was available and declined to make the facility available. The inference that the court took from that is that that was without burden on happy pause, and happy pause simply arbitrarily rejected the idea, and there is no evidence in the record because there is a missing declaration from the record. But in fact, the fair inference is that this is another facility license. If it was simply a matter of getting another license with whatever that cost is, $200 or something, for that license, one would do it. Of course, what's more than that is that it has to be another facility. It is a separate facility. Even if it's on the same property, it's a separate facility, and that entails cost, And on this record, we cannot assume that those are a burden that can be met by happy pause or somebody in the position of happy pause. Thank you very much. Okay. Before you leave, on our time instead of yours, at least on my time, could I ask you and then get Mr. Held his view to kind of satisfy me that this case is not moot? As I understand it, it seeks injunctive relief only. The license expired in October of 2003. I've got too many dates in my head. But anyway, the license expired in October of some year or other, quite some time ago. And it wasn't reapplied for. And typically, in those circumstances, we would say, well, this is just moot. This is not in the record. I understand that happy pause would like to have the license that is making application for the license, and part of its ability to get the license would be the circumstances under which the county can enforce this six-month rule when happy pause wishes to continue to take in animals that would otherwise be euthanized. So it becomes an important point in that regard. But it didn't reapply for. It let the license lapse in October of 2003. So, I mean, the record shows the license lapsed and no application, and the record doesn't show any futility. Is that really what you're arguing? I think the record is silent as to futility. But the futility wouldn't be you could have the license. You just can't get a license that you can't get rid of the ordinance that way. But, I mean, I guess my point is you haven't even asked for a license, even with the condition in it. So how at this point do you have, in effect, standing to challenge the ordinance? Certainly I haven't given it the standing analysis, so I'm not well prepared to answer that. It's kind of an unfair question, and I'll be happy, if we're serious about the question, to give you an opportunity for supplemental briefing. I just sort of appreciated the benefit of whatever thought you had at this point. You're suggesting, however, that the inference, or we would have to draw an inference that they don't want a six-month license because that's contrary to what they have in mind. All they would be interested in is a license that didn't have that six-month restriction. Or that they would not be granted a license so long as they continued to have animals that they had had for longer than six months, so that it would be a futile act to request a license. Okay. Thank you, Mr. Shedd. Mr. Hurd, do you have any? Is this the kind of a case where the county and your clients should sit down and try to work out some reasonable solution? In fact, I believe they are trying to do so, but I think the issue that we've presented may be a stumbling block to the success of that enterprise. We have engaged in substantial discussions on those points, Your Honor, trying to find some resolution. It does appear as though Happy Paws would, before we can work that out, have a ruling from this court. So the county stands ready at any time, because the county is committed to there being lawful running animal shelters in Snohomish County to take in these animals to work with Happy Paws to get them up and running again. But we just have not been able to successfully breach that threshold. We defer our decision to give you some more time to reach a sensible solution. We're all reasonable folks. We have a mediation unit here that might be of assistance if you think you need a mediator involved. Your Honor, the county would embrace any opportunity to discuss these matters with Happy Paws and, as was mentioned, they've been ongoing and would be happy to follow the court's direction if it sent us to mediation or advised us that that was essentially a compulsory event before the court sought to take further action. On Judge Reimer's question, I can tell you that the standing issue is one that certainly has crossed my mind following the submission of briefs. And while it's an issue that can be raised at any time, I was a little uncomfortable raising it at oral argument for the first time, so I did not. But I do believe in the most generous way of looking at it, consistent with what Judge Fischer and the court has said, is that I would expect Happy Paws to respond to that, even though the record doesn't clearly state it, that if their position is we are a no-kill shelter, we will take in an animal, and if six months passes, we're not going to give it away, we're not going to kill it, and we're not going to get another license. And that's what we're going to write on our new application, that the county would not grant that application. And consequently, the futility argument would be what gives them standing, notwithstanding the fact I don't believe the record fully supports that. Thank you. Did you have anything to say, Mr. Sale, to Judge Fletcher's inquiry about mediation? About whether mediation would work? Yes, or would be helpful. I have not talked with my client exactly where that would be, but I think the stumbling block would be that if they were granted a license under the law states, currently states six months. That's the point of mediation, I guess, is to get over stumbling blocks. Yes, I understand. I'm not sure that this one can be got over by mediation. The point being that the code says six months, and if they started an operation again at the end of six months, we'd be in the same problem. Are you willing to try mediation? Are you open to it? That's the question. Not having talked with my client, I nevertheless get the impression yes. Okay. Counsel, both of you, we appreciate your argument. The matter just argued will be submitted. I assume if the county's party to the mediation, the ordinance could be on the table. Right? Anyway. I guess the only thing we can agree on is we all love dogs. Uh-huh. The county can go back to work. You don't think the county counsel can? Ask the council to go back? I think so. Sal's doing it right now. The other counsel. Hmm? Well, let me think.
judges: Fletcher, Rymer, Fisher